**SO ORDERED.**

**SIGNED this 27th day of September, 2012.**





Robert E. Nugent
United States Chief Bankruptcy Judge

___

DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

IN RE:

JAMES A. MEIS, ) Case No. 10-13207
) Chapter 11
        Debtor. )
_____ )

JAMES A. MEIS, )
)
        Plaintiff, )
v. ) Adversary No. 11-5011
)
THE FOWLER STATE BANK, )
WELLS FARGO BANK, NA fka WELLS )
FARGO BANK, MINNESOTA, NA, )
)
        Defendants. )
_____ )

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

If James Meis can stand in the shoes of a hypothetical bona fide purchaser for value, he can

-1-

avoid Wells Fargo's mortgage on his homestead acting as a debtor in possession wielding the trustee's avoiding powers under 11 U.S.C. § 544(a)(3). But if the summary judgment record shows that as a matter of law, Meis was on actual or constructive notice of Wells Fargo's lien, summary judgment must be entered against him on that claim. That, in turn, depends on whether anything in the instruments in the chain of title did or should have placed a hypothetical purchaser on notice of the lien. After careful review of the record on summary judgment, I conclude that it did and that Meis cannot prevail as a hypothetical bona fide purchaser. Wells Fargo is entitled to summary judgment on the lien avoidance claim. Wells Fargo is also entitled to summary judgment on Meis's resuscitated standing objection that this Court previously dismissed in its December 9, 2011 Order[1] because the conclusions in that order are now the law of the case.[2]

**Jurisdiction**

An action to avoid a lien on debtor's homestead under 11 U.S.C. § 544(a)(3) is a core proceeding over which this Court may exercise subject matter jurisdiction.[3] A chapter 11 debtor-in-possession has all the rights and powers of a trustee under 11 U.S.C. § 1107(a), including the right to exercise § 544(a) avoidance powers.[4] Accordingly, Meis has standing to bring this lien avoidance action under § 544(a)(3).

**Summary Judgment Standards**

---

[1] Adv. Dkt. 58.

[2] The plaintiff-debtor James Meis appears by his attorney Elizabeth A. Carson of Bruce, Bruce & Lehman, L.L.C. The defendant Wells Fargo Bank, N.A. appears by its attorneys Adam R. Burrus and Thomas J. Lasater of Fleeson, Gooing, Coulson & Kitch, L.L.C. No other parties appeared in these summary judgment proceedings.

[3] 28 U.S.C. § 157(b)(1) and (b)(2)(K) and § 1334(b).

[4] *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523-24 (10th Cir. 1990).

-2-

Fed. R. Civ. P. 56(c), incorporated in adversary proceedings by Fed. R. Bankr. P. 7056, directs the entry of summary judgment in favor of a party who "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." If the party moving for summary judgment does not bear the burden of proof at trial, it must show that there is an absence of evidence to support the nonmovant's case.[5] The Court's function in reviewing a motion for summary judgment is to first determine whether genuine disputes as to material facts exist for trial. In making this determination, the Court may not weigh the evidence nor resolve fact issues.[6] All reasonable inferences and doubts are resolved in favor of the nonmovant Meis.[7] Once the Court determines which facts are not in dispute, it must then determine whether those uncontroverted facts establish a sufficient legal basis upon which to grant movant judgment as a matter of law.[8]

**Findings of Fact**

After Wells Fargo filed this motion, the parties submitted an agreed pretrial order that contained a series of stipulations that, along with the facts that are uncontroverted on summary

---

[5] *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

[6] *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1154 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)); *Concrete Works of Colo., Inc. v. City and Cnty of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (Court may not resolve disputed questions of fact at the summary judgment stage).

[7] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)

[8] *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F.Supp. 406, 407 (D. Kan. 1986) (Even if there are no genuine issue of material fact, the movant still has the burden to show it is entitled to judgment as a matter of law.).

judgment, are summarized as follows.[9]

In 2001, Meis and his then-wife Sheri acquired a tract of land by deed in Section 12, Township 27 South, Range 28 West and another adjoining tract in Section 13, all in Gray County, Kansas. Meis's homestead is located on the Section 13 tract and is commonly known as 18502 U Road, Cimarron, Kansas. They mortgaged both tracts for construction to the First National Bank of Cimarron in 2001 and both mortgages were filed of record. In 2002, they made two mortgages to M&T Mortgage Company to refinance the Cimarron Bank debt, but both mortgages covered the section 12 land. In 2003, the Meis's applied to Bank of America for a mortgage loan that would encumber their homestead on section 13. They granted a mortgage to BOA to secure repayment of $400,000 and, on September 17, 2003, BOA recorded a mortgage that mistakenly described the section 12 tract instead of the section 13 property. Both the Meis's and BOA had intended that the mortgage would encumber the tract in section 13 and when BOA learned from James Meis that his homestead was situated on the section 13 tract, it re-recorded a correction mortgage on June 14, 2004 that included the correct legal description. Sheri and James Meis subsequently divorced, but the summary judgment record is silent as to when that occurred.[10]

That both mortgagors intended the lien to attach to section 13 is evidenced by the Uniform Residential Loan Application prepared and signed by Meis and his former wife as well as Meis's

---

[9] *See* Adv. Dkt. 83, 104, 109 (parties' summary judgment memoranda) and 97 (final pretrial order entered June 11, 2012)

[10] The title commitment obtained by James Meis that is part of Exhibit 4 to the Bank's statement of uncontroverted facts contains a copy of quitclaim deed from Sheri K. Meis, "a single person, former wife of James A. Meis," to James Meis, "a single person, former husband of Sheri K. Meis." *See* Adv. Dkt. 83-22. That deed was recorded on September 29, 2009, more than five years *after* the correction mortgage was filed.

-4-

deposition testimony. Meis testified in his deposition that before BOA filed the correction mortgage, Meis faxed documents from his business office in May of 2004 indicating that the homestead was located on section 13. He also sent a copy of his original deed for both properties that he had marked with a handwritten notation that the section 12 property "should be clear."[11] When BOA filed the correction mortgage on June 14, 2004, it also filed a partial mortgage release rendering the section 12 tract free and clear. Neither Meis nor his wife executed the correction mortgage; instead, BOA simply annexed the section 13 tract's legal description to the original mortgage and filed the document with the Gray County Register of Deeds. BOA's mortgage as originally filed contained the wrong legal description, but it also contained a correct reference to the common address of the Meis homestead, 18502 U Road, and a "parcel ID number, GA00545." This parcel number is different from that which appeared on one of the M&T mortgages that encumbered the section 12 tract, 156130000000102-0.[12]

Meis filed this bankruptcy case on September 21, 2010.[13] On September 22, 2011, Meis obtained a title insurance commitment covering the section 13 tract and the re-recorded mortgage was listed as an exception to the commitment. According to Mitch Little, a licensed abstractor familiar with the search methodology in Gray County and who examined the chain of title for the section 13 property, the re-recorded mortgage is in the chain of title.[14]

---

[11] *See* the Bank's statement of uncontroverted facts, ¶¶ 14, 15, and 16. Adv. Dkt. 83, p. 5.

[12] The second M&T mortgage, covering the section 12 tract, contained no parcel number.

[13] The case was commenced as one under chapter 13 but converted to chapter 11 on June 30, 2011.

[14] Adv. Dkt. 83-4.

-5-

Case 11-05011   Doc# 122   Filed 09/27/12   Page 5 of 16

The BOA note was endorsed in blank by BOA.[15] BAC Home Loans Servicing, L.P., as servicer for Wells Fargo, has filed a proof of claim on Wells Fargo's behalf, to which Meis has objected.[16] In his amended complaint, Meis challenged BAC and Wells Fargo's standing to enforce the note and mortgage but as previously determined by this Court on Wells Fargo's motion to dismiss, BAC or Wells Fargo had standing to enforce the note and mortgage as it was the holder of the note and BAC was acting as Wells Fargo's servicer.[17] This proceeding will determine whether Wells Fargo's claim is secured or unsecured. Under Meis's confirmed plan, if he successfully avoids Wells Fargo's lien against his homestead, the proceeds from the sale of the section 13 property will be divided between debtor and his unsecured creditors; if he fails, the homestead sale proceeds will be distributed to the lienholders in order of priority.[18]

**Analysis**

Meis asserts that the re-recorded mortgage is not sufficient to place a hypothetical bona fide purchaser [BFP] on notice of its existence because neither he nor his former wife signed the correction mortgage and because the correction mortgage was not properly acknowledged. Wells Fargo responds that re-recording a mortgage to correct a clerical error is an accepted legal practice and that the recording places successors in interest to Meis on notice of the mortgage lien.

---

[15] The BOA note was attached to Meis's amended complaint, as well as the proof of claim filed by BAC Home Loans Servicing, L.P. as servicer for Wells Fargo. *See* Amended Proof of Claim 10-3.

[16] *See* Amended Proof of Claim 10-3. Meis's claim objection is tracking with this adversary proceeding.

[17] Adv. Dkt. 58, Order Granting in Part and Denying in Part Motion to Dismiss entered December 9, 2011..

[18] Dkt. 340, Order Confirming Chapter 11 Plan entered February 22, 2012; Dkt. 307, Amended Chapter 11 Plan dated November 14, 2011.

-6-

Meis's second claim is that Wells Fargo and its servicer lack standing to enforce the mortgage. Though Meis reintroduces argument in favor of that claim in the briefing of this motion, the claim has already been dismissed. When Meis filed his amended complaint on August 1, 2011,[19] Wells Fargo responded with a motion to dismiss for failure to state a claim. The Court denied the motion as it pertained to the count seeking to avoid the mortgage, concluding that the complaint met the plausibility standard. The Court granted Wells Fargo's motion to dismiss Meis's second count questioning its standing (and that of its servicer) to enforce the note.[20]

### *The re-recorded correction mortgage was sufficient to place a BFP on notice of Wells Fargo's lien.*

Only if a purchaser has neither constructive nor actual notice of an encumbrance in the chain of his grantor's title does he take the property free and clear of encumbrances.[21] KAN. STAT. ANN. § 58-2222 provides that every recorded written instrument shall "impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."[22] As long as the instrument contains a sufficiently specific description that identifies the land that is encumbered, it imparts that notice.[23] The re-recorded mortgage contains the correct description of the land the parties intended to encumber and, if it is not otherwise subject to challenge, it is sufficient to place a potential bona fide purchaser on notice of the mortgage's

---

[19] Adv. Dkt. 34.

[20] Adv. Dkt. 58.

[21] *See Miller v. Alexander*, 13 Kan. App. 2d 543, 547, 775 P.2d 198 (1989) (recorded instrument imparts constructive notice where subject land is described with sufficient specificity to identify the premises). *See also Luthi v. Evans*, 223 Kan. 622, 629, 576 P.2d 1064 (1978).

[22] KAN. STAT. ANN. § 58-2222 (2005).

[23] *Luthi, supra*.

-7-

existence.

Wells Fargo relies on *Beck v. Brooks* as authority for the proposition that a party's correction of an "obvious mistake" is not a material alteration of an instrument when it does not change the provisions of the corrected instrument from those the parties originally intended.[24] In *Beck*, Brooks bought two combines from Beck, an implement dealer in Oklahoma. In addition to granting Beck a security interest in the combines, Brooks granted Beck a real estate mortgage on land in Osborne County. The mortgage's legal description was erroneous: it purported to cover "80 acres SE ½ 19-5-11." When he granted the mortgage, Brooks owned an undivided one-fourth interest in the south half of that section. The following year, Brooks received a deed pursuant to a family settlement agreement that conveyed to him "80 acres E ½ SE 1/4 19-5-11." On July 2, 1973, Brooks mortgaged this tract to his mother. Then Beck attempted to file his mortgage, but the register of deeds returned it, advising that the description "80 acres SE ½" was incorrect. Beck returned the mortgage after correcting the real estate description, and the register of deeds recorded it on July 18, 1973. When Beck foreclosed its mortgage, the trial court held that the alteration of the mortgage voided it because Brooks had not ratified the alteration. On appeal, the Kansas Supreme Court held that the doctrine of equitable mortgages should be applied to prevent injustice and inequity and that the correction of the "obvious mistake" on the mortgage did not void the instrument because it did not "change the terms, rights or obligations of either party from that originally intended."[25]

I distinguish the *Beck* case from other Kansas authority that questions the validity of altered instruments when those alterations affect the rights of intervening third parties. In *Kirkpatrick v.*

---

[24] 224 Kan. 300, 303, 580 P.2d 882 (1978).

[25] *Id.*
-8-

*Ault*, land was conveyed to Ault and his wife, Margaret.[26] After their deed was recorded, Kirkpartick took a judgment against Ault which then became a lien on his undivided interest in the property. Several months later, the Aults' grantors filed a "correction deed" that named Margaret as the sole grantee. In a declaratory action to determine the validity of the correction, the Kansas Supreme Court held that "as against third persons an alleged defective deed can be cured only by a bill in equity, and not by a confirmation assuming to relate back to the original deed."[27]

In *In re Owen*, the debtor Gerald Owen intended to convey four parcels of land to Patricia Owen, but the quitclaim deed he drew for that purpose misdescribed one of them, placing it in section 25 rather than section 26.[28] The Owens' owned no land in section 25. A bank took a judgment against Gerald later and, when, after Gerald's bankruptcy, Patricia tried to sell the parcel, she discovered that it had been erroneously described on the deed. Gerald filed a motion in his bankruptcy case to allow the parcel to be sold and Patricia to receive one half of the proceeds. The bankruptcy court permitted the sale, concluding that the misdescription was the result of a mutual mistake. District Judge Rogers affirmed, concluding that when the error is the result of a mutual mistake, there is no evidence of fraudulent intent, and the rights of third parties are unaffected, the deed could be reformed. Judgment creditors are not innocent third parties whose rights override reformation.[29]

---

[26] 177 Kan. 552, 280 P.2d 637 (1955).

[27] *Id.* at 557. In *Kirkpatrick,* there was no mutual mistake by the grantors and grantees, a significant distinction noted by the court in *In re Owen, infra.*

[28] *Citadel Bank of Augusta v. Wittman (In re Owen),* 101 B.R. 266 (D. Kan. 1989).

[29] *Id.* at 268 (citing to RESTATEMENT (SECOND) OF CONTRACTS, § 155, comment f (1981)).

-9-

In the pretrial order, Meis and Wells Fargo stipulated that they intended the 2003 mortgage to encumber the section 13 tract.[30] They also stipulated that Meis applied for this loan with the intention of encumbering that section and that the re-recorded mortgage accurately reflects the intentions of the parties. After the 2003 mortgage was recorded, Meis supplied BOA with documents to show that the tract he intended to mortgage lay in section 13. Meis and BOA made an "obvious mistake" and *Beck* supports concluding as a matter of law that BOA's correction of that mutual mistake in no way strayed from what the parties intended when they executed the mortgage. No intervening third party's rights were affected by the correction. Meis's hypothetical rights as a debtor in possession did not arise until the date of his petition in 2011, seven years after the correction deed was filed.[31] With respect to the correction mortgage he is not an "intervening" third party. Therefore, the correction mortgage is not void and, because it was properly recorded, it imparts constructive notice of the mortgage's lien under KAN. STAT. ANN. § 58-2222 to an otherwise bona fide purchaser, defeating any hypothetical status that could be claimed by a state law potential bona fide purchaser or, as in this proceeding, by a trustee or debtor in possession.

My conclusion that filing the correction mortgage without the Meis's ratification did not amount to an unlawful or void alteration also compels the conclusion that the mortgage is not void as a homestead encumbrance not approved by both spouses. Nor does BOA's failure to secure a re-acknowledgment of the correction mortgage render it ineffective. If, as discussed above, Kansas law contemplates the unilateral alteration and recording of a corrective document without the signatures

---

[30] Adv. Dkt. 97, p. 6.

[31] § 544(a)(3) ("The trustee shall have, *as of the commencement of the case* . . . the rights and powers of . . . (3) a bona fide purchaser of real property . . . .").

-10-

of its makers when the alteration corrects an obvious error, reflects the parties' true intent, and does not affect the rights of intervening third parties, an acknowledgment of their signatures should not be required. Both James and Sheri signed the original mortgage document and James Meis makes no complaint about the sufficiency of its acknowledgment. Moreover, ancient Kansas case law holds that an unacknowledged deed passes title equally with one that is duly acknowledged.[32] A defectively acknowledged and recorded instrument imparts constructive notice where the defect is latent.[33] My holding in *In re Androes* does not help Meis here either because that case dealt with a patently defective acknowledgment of an original mortgage, not a correction to a previous and properly acknowledged one.[34] Here, the corrected mortgage was a copy of the previously acknowledged mortgage; that defect is latent, not patent.

As to the homestead issue, James and Sheri were married and, as he freely admitted, intended to consent to the encumbrance of their homestead in 2003. The filing of the correction mortgage to conform it to their intent, even without either of their signatures anew, does not run afoul of KAN. STAT. ANN. § 60-2303. That statute requires that both husband and wife execute a document conveying an interest in their homestead for the conveyance to enforceable. Here, both James and Sheri signed the original 2003 mortgage as that statute would require. Nor should James be able to assert claims on behalf of Sheri when she deeded her interest in the section 13 tract to him in 2009.

***Prior conveyances in the chain of title would place a potential purchaser on constructive notice of the mortgage lien in the section 13 tract.***

---

[32] *Arn v. Mathews*, 39 Kan. 272, 18 P. 65 (1888).

[33] *Hildebrandt v. Hildebrandt*, 9 Kan. App. 2d 614, 618, 683 P.2d 1288 (1984).

[34] 382 B.R. 805 (Bankr. D. Kan. 2008) (Acknowledgment of 2002 mortgage "on day and year last above written" – the maturity date in 2017 – failed to comply with Kan. Stat. Ann. § 53-501 et seq., the Uniform Law on Notarial Acts).

A purchaser of land is deemed to have notice of the contents of all the prior recorded deeds and mortgages in his grantor's chain of title.[35] What notice would a prospective purchaser of the section 13 tract receive from his imputed knowledge of the documents in its chain of title? The summary judgment record contains a recitation of the chain of title from Meis's deed to the section 13 tract until the date of his bankruptcy petition, the date of the hypothetical bona fide purchase. Even if Kansas law did not operate to place Meis's purchaser on notice of the mortgage itself, the contents of earlier-recorded documents do. Those documents would be located by anyone perusing either the grantor or grantee index, both of which the Gray County Register of Deeds was required by law to maintain.[36] In addition, the Register of Deeds may also maintain the optional numerical or "tract" index that indexes conveyances by quarter-section.[37] As the Tenth Circuit stated in *In re Colon*, the task of the court is to determine what someone examining the grantor-grantee indices might ascertain from a review of *documents* in the chain of title.[38]

To determine what falls within the chain of title, a purchaser should examine each conveyance from the grantor during the period of his ownership to see whether it affects the parcel in question.[39] If the search leads to a deed by the grantor of a different parcel, the purchaser would

---

[35] *Bacon v. Lederbrand*, 98 Kan. 631, 160 P. 1029 (1916) (citing to the 1909 GEN. STAT. version of what is now § 58-2222).

[36] *See* KAN. STAT. ANN. § 19-1205 (2007).

[37] *See* KAN. STAT. ANN. § 19-1209 and 1210 (2007).

[38] *Hamilton v. Washington Mutual Bank, F.A. (In re Colon)*, 563 F.3d 1171, 1173, 1180-81 (10th Cir. 2009) (mortgage real estate description misstated the lot number it encumbered, but correctly stated the street address and parcel identification number), citing *Bacon v. Lederbrand, supra*.

[39] 563 F.3d at 1182.

Case 11-05011    Doc# 122    Filed 09/27/12    Page 12 of 16

not be charged with notice of that. But, if, for example, the purchaser might be placed on notice by examining a metes and bounds description and determining the correct section number from it, he would be charged with knowledge.[40] So, if an examination of the grantor's index would reveal an instrument that patently affected the parcel in question or could be construed to do so, any such document would lie in the chain of title. With that in mind, we turn to the documents said to be in the chain of title according to the affidavit of Mitch Little, an abstracter in Gray County.[41]

That affidavit shows that James and Sheri Meis received a deed to both the section 12 and 13 tracts on February 23, 2001. Then, it appears they granted construction mortgages in both tracts to the First National Bank - Cimarron in 2001 and, in April of 2002, granted two additional mortgages in the section 12 tract to M&T Mortgage Corporation. The terms of the construction mortgages to First National stipulate that the proceeds of the construction loans they secure are to be used to erect buildings on the mortgaged premises. Notations that each mortgage has been released are contained on the first page of all four of the mortgages. So far, careful study of each conveyance would reveal that Mr. and Mrs. Meis received one deed describing two tracts in different but adjoining sections, that the tracts nevertheless shared a common address of 18052 U Road even though the section 13 tract appears to lie some 30 feet to the south of the section 12 tract, and that construction mortgages had been filed against both tracts. The next document in the chain is the BOA mortgage that bears the description of the section 12 tract; that document also shows a common address for the property of 18052 U Road. After that is the re-recorded correction mortgage

---

[40] *Hildebrandt,* 9 Kan. App. 2d at 617 (description showed that tract lay in section 34, not section 24).

[41] Adv. Dkt. 83-4.

-13-

that is an exact copy of the prior mortgage and includes the common address, but also annexes the description of the section 13 tract. The final document in the chain is the partial release of the BOA mortgage with respect to the section 12 tract.

An examiner of the record would ascertain that all of the mortgages on either tract show a common address of 18052 U and that the First National mortgages secured construction loans, suggesting that improvements had been erected on the premises. The examiner would also note the presence of the correction mortgage that describes the section 13 tract as well as the contemporaneous partial release of the BOA mortgage as to section 12. Taken together, those facts place a prospective purchaser on notice that a problem worthy of further inquiry exists. Even if the purchaser disregarded the correction mortgage in its entirety, the presence of a "*partial* release" of the underlying BOA mortgage as to section 12, combined with the presence of a deed for both the section 12 and 13 tracts, the construction mortgages, and the common address issue would surely excite some curiosity about whether some form of encumbrance of section 13 had been granted. The content of these documents in the chain of title suffice to place a would-be purchaser on notice of a possible encumbrance of the parcel in section 13.[42] This is enough to thwart a trustee's or debtor-in-possession's exercise of his hypothetical state law bona fide purchaser powers under § 544(a)(3). Wells Fargo is entitled to summary judgment on Count I of Meis's amended complaint as a matter of law.

### *Meis's renewed claim concerning BAC's standing as Wells Fargo's servicer is not properly before the Court on this motion.*

---

[42] *See Hildebrandt* at 617 (error in deed naming section 24 is remedied by reference in metes and bounds description to section 34; this along with common name of tract "affords a reasonably certain and sufficient means of identification within the deed itself").

In his response to Wells Fargo's motion for summary judgment, Meis asserts a series of "uncontroverted facts" that bear on his objection to Wells Fargo's claim. Wells Fargo says in reply that the order granting its motion to dismiss Count II of Meis's complaint renders these assertions moot. In that count, Meis prayed for a determination that BAC's proof of claim on behalf of Wells Fargo be disallowed on account of various alleged violations of a Pooling and Servicing Agreement among Wells Fargo, a Real Estate Mortgage Investment Conduit Trust, and BAC as servicer. In granting the motion to dismiss this count, I concluded that, as Wells Fargo was the holder of the BOA note, it had the right to enforce it under Article III of the Kansas Uniform Commercial Code.[43] Meis did not challenge Wells Fargo's or BAC's possession of the note.[44] Instead, he relies on a violation of the Pooling Agreement. Meis's objection to claim filed in the main case recites that Wells Fargo, not BAC, is the actual creditor and that nothing in its proof of claim "establishes the right of BAC Home Loans Servicing LP to act on behalf of Wells Fargo . . . ."[45] This objection is similar, if not identical, to the allegations in the dismissed Count II that Wells Fargo as trustee of the REMICT and its "alleged servicer" BAC are legally barred from enforcing the note and mortgage. The objection to claim, filed in January of 2011, predated the dismissed Count II by eleven months. When the Court dismissed the amended complaint as it related to standing, it essentially resolved the objection to claim. In any event, the briefing of this motion is not the

---

[43] *See* KAN. STAT. ANN. § 84-3-301(a); Adv. Dkt. 58, Order Granting in Part and Denying in Part Motion to Dismiss entered December 9, 2011.

[44] Since the December 2011 Order on the motion to dismiss, BAC's counsel has filed an affidavit in the bankruptcy case stating under oath that BAC sent the original BOA note to him on July 26, 2012 and that he (BAC) remains in possession of the note pending this Court's decision. *See* Dkt. 346-1 filed August 2, 2012.

[45] Dkt. 81.

-15-

appropriate place to fight that battle as Meis's Count II has been dismissed since December of 2011.

*Conclusion*

With the entry of summary judgment in favor of Wells Fargo and BAC on Count I today and Count II having been dismissed on December 9, 2011, and with the resolution by journal entry of Count III, a claim filed against the Fowler State Bank, no work remains to be done in this adversary proceeding. Wells Fargo and BAC are entitled to judgment on Meis's lien avoidance action. A judgment on decision will issue this day.

Because the effect of this Order is to determine that BAC/Wells Fargo holds an allowed secured claim against Meis properly secured by a lien on his homestead and that Wells Fargo is entitled to the proceeds from the sale thereof, there are no further issues to resolve in connection with Meis's objection to Wells Fargo's claim. The question of standing has been previously resolved by the Court's December 9, 2011 Order on Wells Fargo's motion to dismiss. No issues remain for trial on the claim objection. Accordingly, the final pretrial conference setting of October 9, 2012 is terminated and the related motion to strike expert witness is moot.

# # #

-16-

Case 11-05011    Doc# 122    Filed 09/27/12    Page 16 of 16